**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------X
MARIA ALMONTE, et al.,

                      Plaintiffs,                    **MEMORANDUM AND ORDER**

       -against-                          CV 04-4192 (JS) (JO)

THE CITY OF LONG BEACH, et al.,
                           Defendants.
------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

       In a letter-motion dated July 8, 2005, Defendants Mona Goodman, James P. Hennessy,

Denis G. Kelly, Leonard Remo and Thomas Sofield, Jr., all of whom are elected members of the

City Council for the City of Long Beach (the "Council Members"), along with City Manager

Glen Spiritis ("Spiritis" or, collectively with the Council Members, the "Individual Defendants")

seek reconsideration of my Order of June 30, 2005,  Docket Entry ("DE") 25, in which I denied

their application for a protective order pursuant to Rule 26(c)(1) of the Federal Rules of Civil

Procedure barring their depositions.  DE 33.  They also seek an extension of the discovery

deadline to October 31, 2005, as well as a stay of the Individual Defendants' depositions pending

a determination by the Honorable Joanna Seybert, United States District Judge, of the their

motion for dismissal predicated on an assertion of legislative and qualified immunity.  *Id*.

Plaintiffs Maria Almonte, Mary Cammarato, Barbara Davis, Gregory Scott and Peter Snow are

willing to agree to certain changes in the discovery schedule, but oppose the requested relief in

the event I do not approve those changes.  DE 36.  I heard oral argument on the application at a

conference on July 12, 2005.  For the reasons set forth below, I now deny the defendants'

application in its entirety, and I reject the parties' joint proposal to stay and extend discovery

without prejudice to renewal upon the filing of a motion for leave to amend the Complaint.

I.    Background

The following recitation repeats the background information set forth in my earlier order and adds details made relevant by the instant application. The plaintiffs were formerly employed by the defendant City of Long Beach (the "City") as, respectively, Bus Dispatcher, Tax Assessor, Administrative Aide, Assistant Superintendent of Sanitation, and Superintendent of Municipal Buildings. On September 27, 2004, they filed a complaint alleging that their employment was wrongfully terminated on the basis of their political affiliations, in violation of their rights under the First and Fourteenth Amendments to the United States Constitution and under Section 201-d of the New York Labor Law. DE 1. The defendants denied the allegations and asserted several affirmative defenses. DE 4.

On December 13, 2004, the parties appeared before me for an initial conference at which time I set a discovery schedule. DE 9. The Council Members did not assert at the initial conference that they were immune from being subjected to this lawsuit. Pursuant to the scheduling order, the deadline for completing all discovery was June 30, 2005. DE 10. I also scheduled a status conference for April 14, 2005, at 9:30 a.m. However, on March 31, 2005, the defendants' counsel submitted a letter to advise me on behalf of both parties that no conference would be needed. As the defendants' counsel wrote at that time, "The parties are proceeding with discovery and are currently preparing their respective responses to each other's Interrogatories and Document Requests. Depositions will be taken shortly after service of same." DE 12.

Notwithstanding that representation, as of June 6, 2005, with only 24 days remaining before the close of all discovery, the defendants had provided no written discovery, despite several promises to do so. DE 15. On June 7, 2005 – after the defendants' delay was brought to

my attention, but before I could address it at the pretrial conference scheduled for June 10, 2005 – the defendants finally served their written discovery responses. DE 16. They also for the first time expressed their intention to seek to avoid depositions on the ground of legislative immunity.

At the conference on June 10, 2005, I resolved certain discovery disputes, as well as the defendants' objection to the depositions of individual council members. DE 17. I denied the latter objection as untimely and stated that "I will reconsider the objections if (a) the parties agree on a schedule for all remaining depositions (including those of the council members), and (b) the defendants submit a letter-brief explaining why the depositions must be prohibited ...." *Id.*

In addressing the matter orally at that conference, I attempted to express the view that, although I understood the Individual Members' argument that a valid claim of immunity might also absolve them of the responsibility *as parties* to submit to deposition, it was less clear to me that they would also be relieved of an independent obligation to testify *as witnesses* with information relevant to the plaintiffs' lawsuit against the City. My attempt to do so, however, was not particularly well-phrased:

> MR. DONOVAN [Defendants' counsel]: Yes, Your Honor, as we said in our letter, we believe that the City Counsel [sic] members are not subject to discovery in this case.
>
> ***
>
> THE COURT: Okay. Forgive me but –
>
> MR. DONOVAN: And the cases are clear to say that legislative acts are immune from suit and –
>
> THE COURT: Are they immune from discovery on the claim against the – in other words, they can't even be deposed?
>
> MR. DONOVAN: Correct.

DE 37 (Transcript of proceedings dated June 10, 2005) at 7-8. The exchange would plainly have been clearer if I had finished the phrase before cutting myself off (*i.e.*, "Are they immune from discovery on the claim against the *City*?"). Unquestionably, the exchange was sufficiently imprecise that new counsel – whether or not they read the transcript – might have overlooked it or misapprehended its import. The attorneys before me, however, appeared to understand it, as their subsequent submissions included arguments that addressed the issue I attempted so inartfully to articulate.

By letter dated June 14, 2005, the Council Members requested a protective order staying the depositions of the individual council members. DE 19. They argued, on the basis of *Bogan v. Scott-Harris*, 523 U.S. 44 (1998), that local legislators are immune from suit. *Id*. at 1. They added that such immunity also protects them from discovery, citing three cases: *Searingtown Corp. v. Incorporated Village of North Hills*, 575 F. Supp. 1295 (E.D.N.Y. 1981); *Orange v. County of Suffolk*, 855 F. Supp. 620, 623-24 (E.D.N.Y. 1994); and *Rini v. Zwirn*, 886 F. Supp. 270 (E.D.N.Y. 1995). DE 19 at 2-3. They also argued that, as high-ranking governmental officials, they were privileged not to testify except in extraordinary circumstances, citing *Marisol v. Giuliani*, 1998 WL 132810, at *3 (S.D.N.Y. Mar. 23, 1998); *Murray v. County of Suffolk*, 212 F.R.D. 108 (E.D.N.Y. 2002); and *L.D. Leasing Corp. v. Crimaldi*, 1992 WL 373732 (E.D.N.Y. Dec. 1, 1992). DE 19 at 3. By including the latter argument, I understood that the defendants were seeking to address the point that Council Members immune from suit might nevertheless be required to testify as witnesses in the plaintiffs' case against the City.

The plaintiffs responded on June 16, 2005. DE 20. Among other things, they argued that finding the Council Members to be immune from suit would not affect the viability of their claim

4

against the City, and they further argued that the standards articulated in *Orange* and *Marisol* for requiring legislators to testify in such a suit notwithstanding their governmental positions were satisfied here. *See id*. at 2.

I issued a Memorandum and Order resolving the dispute on June 30, 2005. DE 25. In doing so, I considered all of the cases the parties cited, and explicitly referred to several of them. I distinguished between the Council Members' role as defendants – as to which they may enjoy immunity, an issue not then before me – and their role as prospective witnesses in the plaintiffs' case against the City only in passing. Specifically, in discussing the decision in *Searingtown* – the case I discussed and relied on most heavily with respect to the issue of legislative privilege – I first acknowledged that "the court held that the village mayor and the individual board members were absolutely immune from suit for legislative activities, and, as a corollary to such immunity, were privileged against the disclosure of the motivations and deliberations regarding such legislation." DE 25 at 3. I then noted that the court went on to perform a balancing test in assessing whether the legislators in that case could properly invoke a federal common law privilege, and concluded that "[t]he lesson [of *Searingtown*] is that [legislative] immunity can support such a privilege *where the questioning itself – distinct from the chilling prospect of liability –* would threaten the legislature's independence or integrity." DE 25 at 4 (emphasis added). Performing the same balancing under the circumstances of this case, I found an insufficient basis for invoking the federal common law privilege. *Id*. at 6-7. I then went on to analyze, and found wanting, the plaintiffs' invocation of the high-ranking official's privilege. *Id*. at 7-9.

On July 6, 2005, the defendants submitted a proposed order to allow new counsel to replace the firm that had represented them since the start of the case. As discussed below, I ordered the substitution without requiring strict adherence to Local Civil Rule 1.4. Based on my order, new counsel filed a notice of appearance on behalf of all defendants the next day, DE 32, and also filed the instant application. DE 33.

Finally, while the discovery motion was pending before me, the defendants, acting through their original counsel, filed a motion for judgment on the pleadings. DE 22. The motion was amended on June 27, 2005. DE 23. That motion remains pending. In fact, it appears to be pending in spades: The original motion and the amended motion both remain pending on the docket, and the plaintiffs responded to the latter on July 7, 2005, DE 31. The next day, however, the defendants' new counsel submitted a third motion for judgment on the pleadings by all defendants, DE 34, accompanied by a cover letter that purported to withdraw the previous motion to which the plaintiffs had already responded, *id.*, and a memorandum of law in support of the newly filed motion, DE 35. The latest submissions are substantially similar to the papers previously filed by predecessor counsel in support of the motion seeking identical relief, although it appears new counsel has reconfigured some of the memorandum and added a qualified immunity argument not contained in the original.

II.     Discussion

    A.     Reconsideration

The defendants purport to make the instant application for reconsideration and other relief pursuant to my individual rules, Local Civil Rule 37.3, and Federal Rule of Civil Procedure 26(c)(1). None of those rules is apposite to the request for reconsideration. The only pertinent

provision in my individual practice rules is Rule III.A.1 regarding letter motions, which permits

discovery or other non-dispositive motions to be made by letter motion, pursuant to Local Civil

Rules 37.1 and 37.3. Local Civil Rule 37.3 has one provision regarding reconsideration ("[a]

ruling made exclusively as a result of a telephone conference may be the subject of *de facto*

reconsideration"), but it has no relevance here. And Rule 26(c)(1) allows for protective orders

but says nothing about reconsideration.

 The correct procedural mechanism for the defendants to ask me to reconsider my earlier

order is Local Civil Rule 6.3, which provides as follows:

> A notice of motion for reconsideration or re-argument of a court order
> determining a motion shall be served within ten (10) days after the entry of the
> court's order determining of the original motion .... There shall be served with the
> notice of motion a memorandum setting forth concisely *the matters or controlling
> decisions which counsel believes the court has overlooked.*

Loc. Civ. R. 6.3 (emphasis added). I will disregard the fact that the defendants have overlooked

both the applicable rule and its requirement of both a notice of motion and a supporting

memorandum, notwithstanding the fact that the defect is a sufficient basis to deny the

application.

 More illuminating is the difference between the standard the applicable rule provides and

that relied upon by the defendants. The rule requires the party seeking reconsideration to point

out "the matters or controlling decisions which counsel believes the court has overlooked." Loc.

Civ. R. 6.3. On the other hand, the defendants ask me to grant reconsideration on the basis of a

number of points that I "overlooked *or misapprehended*." DE 33 at 2 (emphasis added). The

difference is an important one: a claim that a judge overlooked a relevant fact or controlling

authority is indeed grounds for reconsideration, but a claim that he misapprehended such matters

– or more bluntly, that he just got it wrong – is not.

> It is well settled that a motion for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked--matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration should only be granted 'to correct manifest errors of law or fact, hear newly discovered evidence, consider a change in the applicable law or prevent manifest injustice.' *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 182 F.R.D. 97, 100 (S.D.N.Y. 1998), *aff'd*, 241 F.3d 135 (2d Cir. 2001). The difficult burden imposed on the moving party has been established 'in order to dissuade repetitive arguments on issues that have already been considered fully by the Court.' *Ruiz v. Comm'r of D.O.T. of City of NY*, 687 F. Supp. 888, 890 (S.D.N.Y. 1988), *aff'd*, 858 F.2d 898 (2d Cir. 1988). To grant such a motion the Court must find that it overlooked '"matters or controlling decisions" which, if considered by the Court, would have mandated a different result.' *Durant v. Traditional Inv., Ltd.*, 88-9048, 1990 WL 269854, at *1 (S.D.N.Y. Apr. 25, 1990). Accordingly, a motion to reconsider should never act 'as a substitute from appealing from a final judgment.' *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 170 F.R.D. 111, 113 (S.D.N.Y. 1997).

*Commercial Union Ins. Co. v. Blue Water Yacht Club Ass'n*, 289 F. Supp.2d 337, 340 (E.D.N.Y.

2003). It is against this standard that I assess each of the several bases on which the defendants

seek reconsideration.

    1. <u>Whether The Pending Assertion Of Immunity Precludes Discovery</u>

The first error that the defendants find in my prior decision is that I misapprehended

Supreme Court case law that holds that discovery should not be allowed where a defendant seeks

dispositive relief on the basis of a claim of immunity. DE 33 at 2 (citing *Siegert v. Gilly*, 500

U.S. 226, 232 (1991); *Anderson v. Creighton*, 483 U.S. 635, 646 (1987); *Mitchell v. Forsyth*, 472

U.S. 511 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Blinco v. Green Tree Servicing,

LLC*, 366 F.3d 1249, 1252 (11th Cir. 2004); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.

2000); and *LeClerc v. Webb*, 2003 WL 21026709, *6 (E.D. La. May 2, 2003)).  New counsel graciously excuses my misapprehension on the ground that it may have been due to his predecessor's shortcomings.  *Id*.  While I appreciate counsel's willingness to place the blame on a colleague rather than on me, it is in fact new counsel who, however understandably, has overlooked or misapprehended the nature of the motion his predecessor made and I decided.

The cases on which the defendants now rely were not cited when the application for a protective order was before me.  *See* DE 19.  That is reason enough not to grant this prong of the motion for reconsideration.  Rule 6.3 "'precludes a party from advancing new facts, issues or arguments not previously presented to the court ....'"  *Hamad v. Nassau County Med. Ctr.*, 191 F. Supp.2d 286, 304 (quoting *Bank Leumi Trust Co. of New York v. Istim, Inc.*, 902 F. Supp. 46, 48 (S.D.N.Y.1995)).[1]

More substantively, there was no reason for the cases to have been cited, as they have nothing to do with the issue I decided.  That is not simply because there was no pending dispositive motion at the time the application for the protective order was made – I assumed such a motion would eventually be filed, possibly before I rendered a decision on the application.  Rather, it is because the immunity defense – related to, but distinct from, the concept of legislative privilege – was not relevant to the issue before me.

---

[1]  At the conference on July 12, 2005, when I asked whether the defendants arguments based on the pendency of the dismissal motion were properly before me on a motion for reconsideration, new counsel asserted that he had not submitted the arguments on that basis, but had instead made them in support of the separate request for a stay.  His letter of July 8, 2005, suggests otherwise. *See* DE 33 at 2 ("We respectfully submit that in addressing prior requests for a protective order, this Court misapprehended ... that the Supreme Court has plainly instructed that where, as here, a dispositive immunity-based motion is filed, 'discovery should not be allowed.'") (emphasis omitted).  The matter is of no moment, as I next address the arguments on the merits.

There is no question that allowing discovery into the claim against a party who claims immunity may deprive that party of much of the benefit of the immunity, and that therefore such discovery is normally to be avoided. But that unremarkable proposition says nothing about whether, when a plaintiff sues a non-immune defendant such as the City, an immune legislator may be called as a witness during the discovery phase of the case against that non-immune entity. As I noted in my prior order, *Searingtown* refutes the proposition that "an individual legislator's absolute immunity against being held personally liable for legislative acts necessarily translates into a privilege against testifying about those acts." DE 25 at 4. To the contrary, as I also noted, "'[t]he Supreme Court [has] rejected the notion that the common law immunity of state legislators gives rise to a general evidentiary privilege.'" DE 25 at 4 (quoting *Manzi v. DiCarlo*, 982 F. Supp. 125, 129 (E.D.N.Y. 1997) (citing *United States v. Gillock*, 445 U.S. 360, 374 (1980))). The first prong of the defendants' request for reconsideration is therefore unavailaing.

2.      Whether Plaintiffs' Claims Fail As A Matter Of Law To Defeat Immunity

The defendants next assert that I "overlooked or misapprehended (again, possibly due to the activities of prior counsel) that, as a matter of law, plaintiff's allegations fail to overcome the absolute legislative immunity which is accorded to all legislators, including local legislators." DE 33 at 2 (citing *Bogan*, 523 U.S. at 49). In particular, the defendants assert that I erred because,

> relying principally on [*Manzi*], [I] refused to uphold the legislative privilege in this case based on, *inter alia*, a misreading of *Manzi*.... In *Manzi*, the Court there did *not* "permit discovery over the privilege objection of a defendant legislator in circumstances much closer to the facts here." [DE 25 at] 4. In *Manzi*, *no* privilege objection was raised, rather the issue was merely a dispute over the removal of a confidentiality designation on undisputedly relevant documents that the *defendants were willing to produce*.

DE 33 at 2 (emphasis in original).  There is much in the quoted passage that the defendants

overlook or misapprehend.

First, the defendants' argument in this regard amounts to nothing more than an assertion

that I misinterpreted case law.  As such, while it is perfectly appropriate as grist for an appeal to

Judge Seybert pursuant to Rule 72(a), it is entirely inappropriate as the basis for a motion for

reconsideration.  For that reason alone, this prong of the motion can and should be denied.  But

that is hardly the only reason.

Second, as to the merits of the argument, it is rather a stretch to describe *Manzi* as the

case on which I "principally" relied.  That distinction goes to *Searingtown*, which announced the

test I analyzed and applied.  *See* DE 25 at 3-7.  By contrast, I cited *Manzi* for two purposes of

lesser importance to the result:  as the source of a quote that tersely captured a rule announced by

the Supreme Court, *see* DE 25 at 4  (quoting 982 F. Supp. at 129) ("'The Supreme Court in

*Gillock* rejected the notion that the common law immunity of state legislators gives rise to a

general evidentiary privilege.'")), and as an instructive example of a case where a similar (but not

identical, *see* DE 25 at 5 n.2) issue had arisen where the claim of privilege had not prevailed.  DE

25 at 4-5.

Third, and most troubling in terms of the care with which the instant application has been

made, the defendants' assertion that "*no* privilege objection was raised" in *Manzi* is simply false.

It suffices to refute the claim to quote the following from the decision:  "The State Defendants

argue that the documents are protected by a 'legislative privilege' derived from the Speech and

Debate Clause of the United States Constitution ... and the comparable provision in the New

York Constitution."  *Manzi*, 982 F. Supp. at 128 (citations omitted).  A longer explication of the

issue in *Manzi* is required, however, to understand exactly how the defendants have exploited a convenient shorthand in my earlier order to cobble together a thoroughly baseless argument in support of their request for reconsideration.

The plaintiff in *Manzi* had worked for Robert DiCarlo, who was at the time of Manzi's employment a New York State Senator. After she lost her job, Manzi sued DiCarlo and others (collectively, the "State Defendants") for what she claimed was wrongful termination. The State Defendants claimed that the termination resulted from cutbacks in the Senate's allocations to DiCarlo for his office. When Manzi asked to see documents relevant to those allocations, "the State Defendants moved for a protective order, claiming the documents [were] privileged and normally not subject to either discovery or disclosure under New York's Freedom of Information Law." *Id*. at 127. "Because the State Defendants conceded the relevance of the documents at issue and indicated their willingness to produce the documents as long as plaintiff kept them confidential, [the magistrate judge] ordered production subject to an order of confidentiality." *Id*.

The issue before the court in *Manzi* was whether, at Manzi's request, the confidential designation of certain documents should be removed. Because the State Defendants opposed allowing the plaintiff to have unrestricted use of the documents, that issue required the magistrate judge to resolve the question of privilege that had been avoided when the parties initially agreed to treat the disputed documents as confidential. Thus, even though the documents at issue had already been produced, the removal of the confidentiality requirement was tantamount to a new production. That is, the documents had been produced before, but only subject to restrictions on further dissemination, the removal of which would so materially change the nature of the production that it could no longer be viewed as voluntary. It is therefore hardly surprising that

"[i]n response [to Manzi's application to remove the confidentiality restriction], the State

Defendants continue[d] to argue that the documents [were] protected by both the 'deliberative

process' and 'legislative' privilege." *Id*. Moreover, the court could not, and did not, decide the

motion before it without deciding whether, under the circumstances of the case, the State

Defendants' invocation of privilege could properly overcome the plaintiff's application for

discovery relief.

In my earlier opinion, I reduced that somewhat convoluted procedural posture to a slightly

imprecise formulation: "in *Manzi*, the court did permit discovery over the privilege objection of

a defendant legislator ...." DE 25 at 4. There is no question that using the phrase "discovery

relief" in place of "discovery" would have more accurately captured the result in *Manzi*. But the

imprecision has no bearing on the merits of the dispute I resolved.

In short, the defendants have misstated both *Manzi* and the extent to which the decision

they now seek to have me reconsider turned on that case. Even ignoring the obvious procedural

flaw in seeking reconsideration on the basis of case law that was previously considered and

addressed, this second prong of the defendants' application for reconsideration is wholly without

merit and is therefore denied.

### 3.    The Defendants' Citation of "prior decisions [sic] in this District"

The defendants' final reason for seeking reconsideration is an assertion that my prior

order "overlooked or misapprehended prior decisions [sic] in this District where the legislative

privilege has *specifically* been upheld to preclude discovery in an unlawful termination case,

including alleged political retaliation." DE 33 at 3 (emphasis in original). Despite the use of the

plural noun, the defendants cite only one such decision: *Orange*.[2] I plainly did not overlook that decision. To the contrary, I quoted the court's observation that there are circumstances in which "'[legislators] might be called to the stand at trial to testify concerning the purpose of the official action ....'" *Orange*, 855 F. Supp. at 623 (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977)) (quoted in DE 25 at 3). Nor did I overlook any legal rule that that case announced, as explained below.

My prior order rendered the preceding quotation from *Orange* (repeated below) with some typographical errors that now I correct. Further, my rendering of the quotation omitted a portion was not then relevant but that, given the Individual Defendants' failure to recognize the distinction between their role as defendants and their role as witnesses, may appear at first blush more important than it is. The full sentence from which I quoted reads:

> However, even where the plaintiff must prove invidious purpose or intent, and judicial inquiry into legislative motive cannot be avoided, as in a racial discrimination cases such as Village of Arlington Heights, the Supreme Court has indicated that only in "some extraordinary instances [legislators] might be called to the stand at trial to testify concerning the purpose of the official action, although even then such testimony frequently will be barred by privileged."

*Id.* That sentence is immediately followed by the following footnote:

> The Supreme Court even cautioned that "[p]lacing a decisionmaker on the stand is ... 'usually to be avoided.' " [*Vill. of Arlington Heights*], 429 U.S. at 268 n.18 (quoting *Citizens to Preserve Overton Parke, Inc. v. Volpe*, 401 U.S. 402 (1971)). *This Court is not faced with a claim that Legislator Binder may not be deposed at all, but of challenges to specific questions asked of Legislator Binder on the ground of legislative privilege.*

---

[2] The defendants also cite two cases from other districts that were not cited previously. DE 33 at 3 (citing *Knights of Columbus v. Town of Lexington*, 138 F. Supp.2d 136, 139-40 (D. Mass. 2001); and *Simpson v. City of Hampton, Virginia*, 166 F.R.D. 16, 18-19 (E.D. Va. 1996). Such decisions are not controlling authority and cannot form the basis for a motion for reconsideration. *See Shrader*, 70 F.3d at 257.

*Id*. at 623 n.2 (emphasis added).

The footnote is instructive because it demonstrates that the issue in *Orange* was not the issue before me, which was whether the defendants' claim of immunity should bar them from any deposition at all. My ruling explicitly allowed the Council Members to raise objections at their depositions to individual questions – the kinds of objections at issue in *Orange*. DE 25 at 6-7 (citing *Sanstrom v. Rosa*, 1996 WL 469589, *5 (S.D.N.Y. Aug. 16, 1996)). Accordingly, there was no rule of law announced in *Orange* that bears on this case, much less one that I overlooked.

Moreover, to the extent that the court in *Orange* ruled on objections to specific questions – a matter not yet before me in this case, and one that the defendants by their motion seek to avoid – it did so on the basis of the same kind of weighing of interests that I performed here:

> I cannot find that [the plaintiff's asserted] interest rises to the level of public need for the full development of relevant facts sufficient to warrant threatening the interest in protecting the legislative process mandated by the Supreme Court in [*Tenney v. Brandhove*, 341 U.S. 367 (1951)] and [*Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391 (1979)]. Accordingly, I must allow defendants' assertion of privilege and deny plaintiffs' motion to compel them to answer questions relating to their motivations and deliberations regarding legislation they enacted. *Searingtown Corp.*, 575 F.Supp. at 1298-99. Similarly, Plaintiffs interests in developing relevant facts in this litigation by compelling Legislator Binder's testimony concerning deliberations and thought processes regarding the Resolution do not outweigh the activities and interests protected by Legislator Binder's legislative immunity and legislative privilege.

*Orange*, 855 F. Supp. at 624. The fact that the interests asserted by the plaintiff in an unrelated case failed to outweigh a legislator's interest in invoking the privilege in that case says nothing about the balance of interests in this case. The defendants therefore overlook or misapprehend the contents of the decision in *Orange* in citing it as a basis for reconsideration.

### 4. Conclusion As To The Motion For Reconsideration

The defendants' application for reconsideration is procedurally defective, and obviously so. Its argument on the merits rests on a misapprehension of the decision the defendants would have me reconsider. Finally, the motion does not assert that there is any reason to reconsider my earlier conclusion that the defendants cannot avoid depositions on the basis of their rank as government officials. *See* DE 25 at 7-9. The motion for reconsideration is therefore denied.[3]

### B. Extending And Staying Discovery

### 1. The Parties' Stipulation

The defendants, as noted above, have included in their motion an application to extend the discovery period and to stay discovery. In their letter of July 11, 2005, the plaintiffs, before responding to those requests, report that they are willing to stipulate to additional time as well as to a temporary stay of discovery, all as part of a larger agreement they have reached with the defendants concerning a possible amended complaint and further procedures with respect to the pending motions for dismissal. Specifically, they report that the parties jointly propose the following:

> 1. Plaintiffs to submit their proposed amended pleading in this matter to the Defendants' counsel who shall review same and advise whether they consent to the amended pleading without necessity for a motion, on or before dates to be determined by the Court.

---

[3] In my earlier decision, I noted that it was unclear whether the application for a protective order was made on behalf of all defendants, or only on behalf of the Council Members. To the extent the application was made on behalf of the City or Spiritis, I noted that those defendants lacked standing and therefore, with respect to them, denied the application on that basis as well. DE 25 at 10 n.6. The instant application for reconsideration does not challenge that portion of the decision regarding standing. Accordingly, neither the City nor Spiritis can seek reconsideration, even if they did join in the initial application.

2.  The 12c [sic] motion currently pending is to be held in abeyance pending the receipt of the proposed amended pleading.  Defendants' counsel will then advise whether or not they consent to the proposed amended pleading.

3.  A briefing schedule will then be set depending upon whether or not Defendants consent to the proposed amended pleading, and will encompass either the current Rule 12c motion (and any cross-motion for leave to amend), or a renewed Rule 12 or Rule 56 motion, all subject to any available defenses and arguments plaintiffs would have in respect to such motions or cross-motion.

4.  All discovery is immediately stayed and such stay shall continue pending the outcome of the foregoing dispositive motions.

5.  The parties further propose to conclude all remaining discovery within 90 days following a decision from Judge Seybert with respect to the foregoing dispositive motions.

DE 36 at 1.

There are several reasons why it is premature for me to address this proposal or grant an extension or stay based upon it.  First, not yet having seen the amended pleading that the plaintiffs appear to be contemplating, I cannot determine whether it will be permitted at this late juncture.  *Cf*. DE 10 (scheduling order setting deadline of February 23, 2005, for amendment of pleadings).  The latter decision will be made by Judge Seybert, unless she refers it to me.  Whoever may consider it later is not in a position to do so now.

Second,  it is normally contrary to my practice to stay discovery simply because a dispositive motion has been filed; I will normally order a stay only upon a showing of good cause based on circumstances beyond the mere pendency of the motion.  The only reason for a stay that I have been presented with to date is the defendants' misplaced reliance on the proposition that defendants who claim immunity should be spared the burdens of discovery.  As explained above, that proposition has no bearing on the plaintiffs' claims against the City, and therefore offers no

reason to order a blanket stay.  If, as discovery proceeds, the plaintiffs make a request for discovery or notice a deposition that, in the defendants view, would be pertinent *only* to the claims against potentially immune Individual Defendants, I will consider staying such matters as appropriate, in accord with *Siegert v. Gilley* and similar cases.  To date, however, no such circumstance has arisen and I therefore have no good reason to stay discovery.  Third, and similarly, I have previously ordered that no discovery extension will be granted absent extraordinary circumstances, and the parties' proposed agreement does not meet that standard (a point I address further in the next section).

Accordingly, I will not stay or extend discovery based on the parties' joint proposal, although I do not foreclose the possibility that I will grant such relief once the plaintiffs have filed an application for leave to amend the complaint pursuant to Rule 15.  Because I do not grant relief on the basis of the joint proposal, I must therefore resolve the defendants' requests for an extension and a stay.  In the absence of my approval of the joint proposal, the plaintiffs object to each of those requests.  *See* DE 36 at 2-3.

2.  The Request For An Extension

The defendants seek what they characterize as a 90-day extension, to October 31, 2005, of the deadline for completing discovery.  DE 33 at 1, 3.  As the current deadline is July 29, 2005, DE 18, the requested extension is actually for a period of 94 days.  Whether new counsel overlooked the deadline set forth in the amended case management and scheduling order of June 10, 2005, DE 18, or merely misapprehended the relevant arithmetic has no bearing on my disposition of the request.

Pursuant to the amended case management and scheduling order currently in effect, **"No request for an extension of the deadlines set forth above will be granted absent a timely showing of extraordinary circumstances.**" DE 18 (emphasis in original). The defendants do not refer to that standard or make any attempt to meet it. Instead, their newly retained counsel asserts that the proposed extension is "reasonable given our recent retention, the fact that the scheduling order has been extended on only one prior occasion, and the absence of any prejudice to the plaintiffs." Under other circumstances, I would agree with that assessment of reasonableness and grant some delay, if not the full 94 days requested here. But I set a higher standard in this case for a reason, and the defendants' failure to meet that standard warrants denial of their application.

The defendants' conduct of this litigation has been characterized thus far by unwarranted foot-dragging. Their latest gambit – a request to stay discovery for three months on the basis of a last-minute, voluntary change of counsel – is hardly the first dilatory tactic. As of June 6, 2005 – more than six months after the initial conference, and less than a month before the discovery deadline – the defendants had provided no written discovery, despite several promises to do so. DE 15. Only after that fact was brought to my attention did the defendants first serve written discovery responses. DE 16. That was also the first time that they revealed their intention to seek to avoid depositions on the ground of legislative immunity, which position appeared inconsistent with their statement on March 31, 2005, to the effect that written discovery was about to be provided and that "[d]epositions will be taken shortly after service of same." DE 12.[4]

---

[4] The circumstances of the instant motion cause me to have additional concern about dilatory tactics. Normally, the defendants would have had until July 15, 2005, to seek review of my denial of the application for a protective order. *See* Fed. R. Civ. P. 72(a) (10-day period to seek

In fairness, the fault for the defendants' predicament – being represented by counsel who have little time to become familiar with the case before defending depositions and completing discovery – lies partly with me. I assumed that any firm undertaking a new representation in the middle of a pending case would do so only if it could either provide competent representation within the constraints of the existing schedule or if it could be certain that those constraints would be eased to accommodate the prospective clients' interest in voluntarily seeking a substitution of counsel. It was on the basis of that assumption that I approved the stipulated substitution. DE 29. In doing so, I failed to adhere to a local rule that allows a party's attorney of record to be "relieved or displaced" only with leave of the court, and which further provides that such leave "may be granted only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement *and the posture of the case*, including its position, if any, on the calendar." Loc. Civ. R. 1.4 (emphasis added). Had I strictly adhered to the rule, or had I suspected that counsel had undertaken a representation it was not in a position competently to fulfill, I would not have ordered the substitution without an inquiry that would have revealed the possibility of the instant application before it was made.

---

review of non-dispositive order by magistrate judge); Fed. R. Civ. P. 6(a) (excluding weekends and holidays from computation of time periods less than 11 days). As the defendants correctly note, that period is tolled by the pendency of a motion for reconsideration. *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 2003 WL 21872389, *1 (S.D.N.Y. Aug. 7, 2003). But, as discussed above, the instant motion does not properly seek reconsideration. The defendants disagree with my analysis of cases that I obviously considered, but despite their repeated use of the word "overlooked," they cite no controlling authority that I failed to acknowledge or any relevant fact that I failed to take into account. The motion was for that reason plainly doomed to fail. But by filing a meritless request for reconsideration, the defendants did succeed in unilaterally forcing an extension until July 19, 2005, of their deadline for seeking review of my earlier decision. I cannot say whether I would have granted such relief if the defendants had forthrightly requested it, *see* Fed. R. Civ. P. 6(b), but their tactics have made the question moot.

Accordingly, at the conference on July 12, 2005, I asked the defendants' new counsel whether, when he accepted the engagement on July 5, 2005, he did so believing that he could both provide competent counsel to his new clients and obey existing court orders in the case. Counsel allayed my concern by answering affirmatively. As a result, there is no actual need for the requested delay other than the need the defendants have voluntarily created by switching attorneys so close to the (already once delayed) discovery deadline. That self-imposed need plainly does not constitute an extraordinary circumstance that satisfies the requirements of the amended case management and scheduling order.

### 3. The Request For A Stay Of Depositions

There is no basis for granting the requested stay of deposition for the Individual Defendants. I permitted those depositions to proceed because the deponents are witnesses with testimony relevant to the plaintiffs complaint against the City, regardless of whether they can also be held individually liable. Although the defendants have belatedly sought to dismiss the claims against the City as well on the ground that the Complaint fails to state a claim, such a request does not by itself warrant a stay of discovery. The defendants have thus shown no good reason to order a stay.

### C. The Possibility That New Counsel Has A Potential Conflict Of Interest

In their response of July 11, 2005, the plaintiffs also requested that I inquire of new counsel as to his prior representation of the City and of plaintiff Mary Cammarato's husband Eugene Cammarato when he was a defendant in a lawsuit involving similar claims of political favoritism. At the conference on July 12, 2005, new counsel confirmed (as does the docket) that he did represent Mr. Cammarato in such a case, and that his current client James Hennessy was

his adversary in that case.  *See Hennessy v. City of Long Beach, et al.*, CV 02-4504 (ADS) (MLO).  New counsel asserted that the circumstances do not raise even a potential conflict of interest, in part because, at present, he does not anticipate – as his predecessor counsel in this case did – calling Eugene Cammarato as a deposition witness.  Counsel acknowledged that he has not yet discussed the possibility of any conflict with his new clients.  That means, among other things, that the defendants have not yet had a chance to consider whether their new counsel's obligation to make a decision about deposing his former client would force him to labor under an intolerable conflict of interest.

The colloquy on the matter illustrates what the Supreme Court has observed in the somewhat different context of criminal litigation:

> a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly.  The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials.

*Wheat v. United States*, 486 U.S. 153, 162-63 (1988).  Fortunately, although we remain in the murky pretrial phase, there is still time for events to show whether the plaintiffs' concerns about a potential conflict will be substantiated, and for new counsel to explore with his clients their willingness to tolerate any such conflict.  In the meantime, I leave it to the parties' counsel to proceed further as they deem fit with respect to any potential conflict issue.  I note only that it is up to counsel, in the first instance, to avoid conflicts of interest, and that the judiciary should become involved only "[i]f an attorney will not perform his ethical duty...."  *United States v.*

*Locascio*, 6 F.3d 924, 934 (2d Cir.), *cert. denied*, 511 U.S. 1070 (1994). As things currently stand, the matter is not ripe for judicial intervention.

III.    Conclusion

For the reasons set forth above, the Individual Defendants' application for reconsideration, for an extension of the discovery deadline, and for a stay of their depositions is denied in its entirety. The parties' joint proposal to extend and stay discovery is likewise denied, although without prejudice to renewal if and when the plaintiffs file a motion for leave to amend their complaint pursuant to Rule 15.

**SO ORDERED.**

Dated: Central Islip, New York
       July 12, 2005

                                            /s/ James Orenstein
                                            JAMES ORENSTEIN
                                            U.S. Magistrate Judge