**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
MARIA ALMONTE, et al.,

                       Plaintiffs,             **MEMORANDUM**
                                                               **AND ORDER**

      - against -

                                                      CV 04-4192 (JS) (JO)

THE CITY OF LONG BEACH, et al.,

                     Defendants.
----------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

By letter motion dated July 20, 2005, Docket Entry ("DE") 45, the plaintiffs seek to compel defendant Glen Spiritis ("Spiritis") to answer certain questions that he refused to answer on the basis of his invocation of legislative privilege when he was deposed in this action on June 29, 2005. In a responsive letter dated July 25, 2005, counsel for all defendants opposes the application. DE 48. For the reasons set forth below, I now grant the plaintiffs' application.[1]

I.    Background

The general factual and procedural background of this case is set forth in my Memorandum and Order of July 12, 2005, DE 38, with which I assume the reader's familiarity. Additional background information is provided below as relevant. The only matter worth recounting here is the telephone conference that the parties refer to in their letters on the instant application. As the defendants' counsel correctly notes, the parties' counsel did call me on July 1, 2005, to seek a ruling on Spiritis' invocation of legislative privilege at his deposition. Assuming that the parties were acting in accord with the provisions of Local Civil Rule 37.3(b), I initially

---

[1] While this Memorandum and Order was in draft form *in computero*, I became aware that the plaintiffs had submitted a letter in reply, DE 50, to which the defendants in turn responded, DE 51. Because my individual rules prohibit such additional submissions, I have considered neither.

thought the deposition was proceeding at that time. When counsel revealed that the deposition had concluded earlier in the week, I reminded them of the local rule, informed them that I would make no ruling during the telephone call, and invited them to pursue the matter in an appropriate manner if they so desired. Not having made any ruling and having determined that the proceeding was improper, I made no entry on the docket. I thus treat the telephone call as a nullity that has no bearing on the instant application.

II. Discussion

The defendants raise four arguments in support of their contention that Spiritis should be permitted to avoid answering certain questions on the basis of his invocation of privilege: (1) all discovery is currently stayed; (2) the plaintiffs' application, being nine pages long, violates Local Civil Rule 37.3 and Rule III.A of my own individual practice rules; (3) the application "runs afoul of the Individual Defendants' legislative immunity and legislative privilege; and (4) the Individual Defendants did not waive theirs [sic] rights to legislative privilege." DE 48 at 1. I address each argument in turn below.

A. The Stay Of Discovery

On July 18, 2005, the parties filed a stipulation and proposed order that would, among other things, stay discovery pending the court's resolution of potentially dispositive motions, and thereafter require the parties to complete discovery within 90 days. DE 42. I ordered a stay pending resolution of some of the subject motions, and required discovery to be completed 30 days after the lifting of the stay.

The instant application does not strike me as inconsistent with the stay, but instead merely asks me to make a ruling so that the parties can more easily complete discovery on schedule once

the stay is lifted. I do not contemplate that Spirits will continue his deposition and answer the questions at issue before the stay is lifted, although I will certainly endorse any application to lift the stay for such purposes should the parties agree to make one.

Further, I ordered the stay based on the parties' stipulation. Any party is free to withdraw from that stipulation and seek to have the stay lifted if it believes its adversary is violating the terms of the parties' agreement. I offer no opinion on whether such relief is warranted under the circumstances, but merely note that the instant ruling does nothing to prejudice such an application.

2. <u>The Length Of The Plaintiffs' Letter</u>

Local Civil Rule 37.3(c), in pertinent part, allows the plaintiffs to make the instant application by submitting a "letter not exceeding three pages in length outlining the nature of the dispute and attaching relevant materials." Similarly, Rule III.A.3 of my individual practice rules provides: "All letters submitted pursuant to this rule shall be no longer than three pages in length, exclusive of attachments." The defendants object that the plaintiffs have violated those rules by submitting a letter-motion that is nine pages in length.

The letter-motion from the plaintiffs' counsel consists of two paragraphs of introductory text on the first page, three paragraphs of concluding text spread across the final two pages, and a transcript of the testimony at issue that begins on the first page and ends on the eighth. DE 45. The defendants' objection thus plainly exalts form over substance, in that the exact same application could have been made by placing the transcript of the testimony at issue in an attachment rather than reprinting it in the body of the letter, and the letter would then have been well within the page limits.

I could of course require the plaintiffs to resubmit their motion in a form that complies with the rules, and then further require the defendants to resubmit their response. Such a vindication of the defendants' vigorous policing of rules intended to streamline litigation and ease the burden on courts would simply increase the parties' burden without affecting in the slightest the substance of the arguments presented in support of or in opposition to the instant application. Rather than engage in such a purposeless exercise, I will proceed to the merits.

3. <u>Legislative Immunity</u>

Spiritis was the City Manager and not a member of the City Council. Unlike the Council Member defendants, he did not invoke legislative immunity to resist appearing at a deposition altogether. At his deposition, he answered a variety of questions, but declined to answer others on the basis of privilege. In doing so, he did not cite legislative immunity as an independent basis for refusing to answer, *see* DE 45 at 1-8. The objection based on immunity as such has therefore been waived.

Reliance on legislative immunity is in any event misplaced. Counsel argues that legislative immunity extends to "executives, outside the legislative branch of local government, as long as they exercise discretionary functions which fall within the legitimate sphere of legislative-related activities." DE 48 at 2. He goes on to cite several cases, one of which is even controlling authority. *See id*. (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1988) (non-legislative officials "are entitled to legislative immunity when they perform legislative functions, .... Bogan's actions were legislative because they were integral steps in the legislative process.")).

Without questioning the validity or applicability of the cited authority, I note that the defendants make no effort to show that Spiritis, in the words of *Bogan*, "performs legislative

functions" or took any "actions [that] were legislative because they were integral steps in the legislative process." Indeed, their argument in that regard is unavailing for two reasons. First, they seek to place the burden on the plaintiffs to prove that Spiritis is not entitled to invoke legislative immunity. As it is Spirits who seeks to avoid answering an otherwise appropriate question at a deposition, he bears the burden of persuasion, which in this case means he must point out the evidence in the record that establishes his legislative role.

Second, the defendants do not explain what evidence in the record supports the proposition that Spiritis had a legislative role, as opposed to his executive role as erstwhile City Manager. No such evidence has been brought to my attention. The only evidence of which I am aware that even suggests the possibility that he had a legislative role is his deposition testimony about meetings held at the private home of Charles Theofan, who was then the Long Beach Corporation Counsel, *see* DE 36 at 2, and has since succeeded Spiritis as City Manager. Present at these meetings were three Council Members (defendants Mona Goodman, James P. Hennessy, and Thomas Sofield, Jr.), two officials who were not members of the legislature (Spiritis and Theofan), and one private citizen, James Moriarty, who apparently was a political affiliate of the others. *See id*. Nothing in the record suggests that the meetings were legislative in nature or that they were "integral step in the legislative process." Moriarty's presence suggests otherwise. Legislative and executive officials are certainly free to consult with political operatives or any others as they please, and there is nothing inherently improper in doing so, but that does not render such consultation part of the legislative process or the basis on which to invoke privilege.

4. Waiver Of Legislative Privilege

The defendants next take issue with the proposition that, by including Moriarty in their discussions, they waived their legislative privilege. Or at least that is what their counsel's letter purports to do – but in fact it returns once again to the more familiar (albeit still inapposite) subject of immunity. DE 48 at 2-3. Such argument entirely misses the point. If Spiritis, or any other individual defendant, had a legislative privilege, it means they were entitled not to divulge their reasons for supporting or opposing legislation, and not to discuss such matters with outsiders. It does not mean they were entitled to discuss those matters with some outsiders but then later invoke the privilege as to others.

Equally inapposite is the defendants' argument that "the privilege is personal to each legislator" and that "a waiver can only be found if each of the Individual Defendants made an 'explicit and unequivocal renunciation' of the privilege." DE 48 at 3. There are two disturbingly obvious flaws with this argument. First, each individual defendant who was present with Moriarty and discussed assertedly privileged matters with him breeched the privilege. Second, the language about "explicit and unequivocal renunciation" that counsel quotes is taken out of context when applied to the issue of privilege. What the Supreme Court wrote is: "we perceive no reason to decide whether an individual Member may waive the Speech or Debate Clause's *protection against being prosecuted for a legislative act*. Assuming that is possible, we hold that waiver can be found only after explicit and unequivocal renunciation *of the protection*." *United States v. Helstoski*, 442 U.S. 477, 490 (1979) (emphasis added).[2]

---

[2] Less obvious but equally flawed is counsel's argument that the personal nature of the privilege means that each holder of the privilege must waive it before any can testify. As the court reasoned, in language the defendants quote only in part (*see* DE 48 at 3):

Aside from its misapplication of the language in *Helstoski*, Counsel makes no attempt to support the surprising assertion that a privilege can be waived only through explicit and unequivocal renunciation, and it would be an affectation of research to cite the many cases supporting the general proposition that a privilege can be waived when the parties holding the privilege share their communications with an outsider. With respect to the particular issue of legislative privilege, I am aware of no case law holding that a waiver is effective only if made in the form of an explicit and unequivocal renunciation. To the contrary, it appears that it is the invocation of privilege that must be explicit:

> A member of the general assembly is, undoubtedly, privileged from arrest, summons, citation, or other civil process, during his attendance on the public business confided to him.... But every privileged person must, at a proper time, and in a proper manner, claim the benefit of his privilege. The judges are not bound, judicially, to notice a right of privilege, nor to grant it without a claim. In the present instance, neither the defendant, nor his attorney, suggested the privilege, as an objection to the trial of the cause: and this amounts to a waiver, by which the party is forever concluded.

---

> The privilege, however, is personal: it belongs to the individual members of a local legislature, not the municipality as a whole. *See Berkley v. Common Council of the City of Charleston*, 63 F.3d 295, 296 (4th Cir. 1995) (en banc) (holding that a municipality is not immune from suit based on the actions of the local legislature); *Burtnick* [*v. McLean*, 76 F.3d 611, 613 (4th Cir. 1996)] (indicating that local legislators have a "testimonial privilege" but "[t]his privilege may be waived" by members of the local legislature). It follows, in this case, that it is not up to the Council to assert or waive the privilege; the councilors must do so for themselves. Indeed, even before the Fourth Circuit's en banc ruling in *Berkley*, the District of Maryland held that "[t]he privilege is a personal one and may be waived or asserted by each individual legislator." [*Marylanders For Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 298 (D. Md. 1992)]. Accordingly, Helping Hand, like previous litigants before this court, will be "free to notice for deposition individual ... legislators and to require each of those persons to assert the privilege on his own behalf." *Id*. at 299 n.16.

*A Helping Hand, LLC v. Baltimore County, Md.*, 295 F. Supp.2d 585, 590 (D. Md. 2003).

*Geyer's Lessee v. Irwin*, 4 U.S. 107, 107-08 (1790); *see also Trombetta v. Board of Educ., Proviso Tp. High School Dist. 209*, 2004 WL 868265, *5 (N.D. Ill. Apr. 22, 2004) (legislative privilege "is waivable and is waived if the purported legislator testifies, at a deposition or otherwise, on supposedly privileged matters").

Carried to its logical consequence, the defendants' reasoning would mean that they could invoke legislative privilege to prevent a private citizen such as Moriarty from divulging what they told him, or what he told them, in unofficial conversations in a private home that excluded some of the legislators who purportedly shared in the privilege. The proposition is not only repugnant to the policy of liberal discovery embraced by the Federal Rules of Civil Procedure, but is also one that has been explicitly rejected. *See Cano v. Davis*, 193 F. Supp.2d 1177, 1179 (C.D. Cal. 2002) ("The legislative privilege does not bar ... a third party non-legislator, from testifying to conversations with legislators and their staffs.") (citing *Gravel v. United States*, 408 U.S. 606, 629, n.18 (1972)).

Spiritis, who is not a legislator, discussed the events at issue in this case with five other persons, some of whom were not legislators (including one who had no governmental position), to the exclusion of some members of the legislature. It would make a mockery of the concept of legislative privilege to hold that Spiritis could invoke it in these circumstances. Accordingly, once the stay of discovery ends, Spiritis must answer the questions he previously declined to answer on the basis of privilege.

III.     Conclusion

For the reasons set forth above, the plaintiffs' motion to compel defendant Glen Spiritis to answer certain questions notwithstanding his claim of privilege is GRANTED.

**SO ORDERED.**

Dated:  Central Islip, New York
            July 27, 2005

                                                                    /s/ James Orenstein
                                                                    JAMES ORENSTEIN
                                                                    U.S. Magistrate Judge