```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MARIA ALMONTE, et al.,

                      Plaintiffs,            MEMORANDUM
                                             AND ORDER
        - against -
                                             CV 04-4192 (JS) (JO)
CITY OF LONG BEACH, et al.,

                      Defendants.
----------------------------------------------------------X
```

**JAMES ORENSTEIN, Magistrate Judge:**

By letter-motion dated August 10, 2005, Docket Entry ("DE") 56, the defendants seek reconsideration or reargument of my order dated July 27, 2005, DE 52, granting the plaintiffs' motion to compel defendant Glen Spiritis ("Spiritis") to answer certain questions that he refused to answer on the basis of his invocation of legislative privilege when he was deposed in this action on June 29, 2005. The plaintiffs have submitted a letter in opposition dated August 11, 2005. DE 58. For the reasons set forth below, the motion for reconsideration is denied.

A.  <u>The Applicable Legal Standard</u>

This is not the defendants' first attempt to seek reconsideration of a decision in this case. *See* DE 38 at 6-8 (denying motion for reconsideration). Now, as before, the defendants rely on an incorrect standard: specifically, they argue that they may seek reconsideration not only if there are "matters or controlling decisions which counsel believes the court has overlooked," Loc. Civ. R. 6.3, but also if the decision they seek to have me reconsider "misapprehended" case law that counsel finds persuasive. *See* DE 56 at 1 n.1. Further repeating past practices, the defendants cite a portion of a case to announce the standard they wish to apply, but leave out the portions that show their position is incorrect.

The defendants argue that it is "well settled" that misapprehension – as distinct from oversight – is a valid basis for reconsideration. In support, they cite a single district court case from another district, from which they quote the following: "[r]econsideration should be granted only where the moving party demonstrates that the Court has overlooked or *misapprehended* ... controlling decisions that were presented to it on the underlying motion." DE 56 at 1 n.1 (quoting *Rocchigiani v. World Boxing Council, Inc.*, 139 F. Supp.2d 440, 441-42 (S.D.N.Y. 2001) (ellipsis and emphasis supplied by defendants). A more complete rendering of the court's discussion in *Rocchigiani* of the standard for reconsideration is the following:

> Reconsideration is discretionary, the relevant factor for today's purposes being the need to correct a clear error or prevent manifest injustice. *See Virgin Atlantic Airways Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). Reconsideration should be granted only where the moving party demonstrates that the Court has overlooked or misapprehended factual matters or controlling decisions that were presented to it on the underlying motion. *See* Local Rule 6.3; *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). This standard is narrowly construed so as to "dissuade repetitive arguments on issues that have already been considered fully by the court." *Caleb & Co. v. E.I. DuPont DeNemours & Co.*, 624 F. Supp. 747, 748 (S.D.N.Y. 1985). The [movant] may not "advance new facts, issues or arguments not previously presented to the Court." [footnote omitted] *Morse/Diesel, Inc. v. Fidelity & Deposit Co. of Maryland*, 768 F.Supp. 115, 116 (S.D.N.Y.1991).

139 F. Supp.2d at 441-42.

To the extent that *Rocchigiani* might be read to support the "misapprehension" of case law as a basis for reconsideration – which would be an incorrect reading, as it would seem to be at odds with the sentences the defendants omitted – it is unsupported by the text of either Local Civil Rule 6.3 (which requires a showing of the "matters or controlling decisions which counsel believes the court has overlooked") or by the cited portion of *Shrader* (a motion for reconsideration "will generally be denied unless the moving party can point to controlling

2

decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."). Moreover, it is apparent both from the context of the decision and other cases reciting the standard for reconsideration that the while the misapprehension of the factual record – which is another way of describing the overlooking of a factual matter – may warrant reconsideration, a party may not seek reconsideration simply by arguing that a judge misinterpreted case law in his earlier decision. *See*, *e.g.*, *Faulkner v. Nat'l Geographic Soc'y*, 296 F. Supp.2d 488, 490 (S.D.N.Y. 2003) ("Reconsideration would be warranted only if the Court had overlooked controlling or persuasive authority or misapprehended the facts.").

Although the defendants seem bent on seeking reconsideration of any order they do not like, and then seeking review pursuant to Rule 72(a), such duplicative litigation is not only meritless, it is frivolous. Contrary to the view counsel claims to discern as "well settled" from his partial quotation of dicta in a case from another jurisdiction, in this court it is in fact well settled that motions for reconsideration "'are generally not favored' ... 'and may not be used solely to relitigate an issue already decided.'" *Jove, Inc. v. Berov*, 250 F. Supp.2d 156, 175 (E.D.N.Y. 2001) (quoting *United States v. Int'l Bd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001); and *Shrader*, 70 F.3d at 257; and citing *PAB Aviation, Inc. v. United States*, 2000 WL 1240196, at *1 (E.D.N.Y. Aug. 24, 2000); and *Resource N.E. of Long Island v. Town of Babylon*, 80 F. Supp.2d 52, 64 (E.D.N.Y. 2000).

B.     Application Of The Relevant Standard To The Merits

The defendants have not demonstrated that there is any controlling law that I have overlooked. Indeed, even under the "misapprehension" standard on which the defendants rely,

3

the misapprehended case law must be controlling authority, and the defendants cite none. All of the cases that the defendants' assert I misapprehended are from other jurisdictions. The closest the defendants come to citing what would be controlling authority if it were apposite is their reference to *United States Football League v. National Football League*, 842 F.2d 1335, 1374-75 (2d Cir. 1988), in support of the proposition that one member of the United States Congress who elects to waive his testimonial privilege under the Speech and Debate Clause of the federal Constitution cannot thereby waive another member's privilege against testifying. DE 56 at 3.[1]

---

[1] Here again, the defendants try to make an irrelevant point seem more compelling than it is. They quote from the affirmance of a district court decision under Fed. R. Evid. 403 to preclude a party from eliciting testimony from one Senator about conversations among others. Here is the entire relevant portion of the affirmed decision by the district court:

> It is well-settled that the Speech or Debate Clause, in addition to insulating members of Congress from civil or criminal liability, also gives rise to a testimonial privilege to resist disclosure of any communication, deliberation, record or document the exposure of which might interfere with legitimate legislative activity. Larkin, *Federal Testimonial Privileges* § 6.02 at 6-8 (1985); *see Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 529 (9th Cir. 1983).
>
> *The NFL has not suggested that the Speech or Debate privilege in any way bars Senator D'Amato from testifying as to his own conversations with NFL representatives.* The Senator's willingness to be a witness in this action is a clear waiver of any testimonial privilege he may enjoy under the Speech and Debate Clause. *Cf. Gravel v. United States*, 408 U.S. 606, 622 n.13 (1972). The NFL argues, however, that Senator D'Amato should not be permitted to testify as to conversations between NFL personnel and other members of Congress. The NFL contends that the Speech or Debate Clause privilege is personal to each member of Congress, and cannot be waived on his behalf by another member. Although defendants' most direct authority for this proposition is suspect, *see United States v. Craig*, 528 F.2d 773, 781 n.7 (7th Cir.), *rev'd en banc*, 537 F.2d 957 (7th Cir.), *cert. denied*, 429 U.S. 999 (1976), the proposition is nonetheless sound. The purpose of the Speech or Debate Clause is to 'protect the integrity of the legislative process by insuring the independence of individual legislators.' *United States v. Brewster*, 408 U.S. 501, 507 (1972). Such a noble purpose would be ill-served if courts permitted individual members of Congress to waive the Speech or Debate privilege of another member.

The citation has nothing to do with this case for at least three reasons. First, to the extent that Spiritis – who was not a member of Congress, nor even a member of the City Council of the City of Long Beach – had any privilege at all, it did not arise under the Speech and Debate Clause. While the legislative immunity on which some defendants rely is a doctrine that arises from the same principle as the Speech and Debate Clause, a decision under that Clause is not inherently controlling authority in a case involving a local legislator.

Second, and more to the point, as I have now had three occasions to note in this case, ""[t]he Supreme Court [has] rejected the notion that the common law immunity of state legislators gives rise to a general evidentiary privilege."" DE 38 at 10 (quoting DE 25 at 4 (quoting *Manzi v. DiCarlo*, 982 F. Supp. 125, 129 (E.D.N.Y. 1997) (citing *United States v. Gillock*, 445 U.S. 360, 374 (1980)))). Simply put, the privilege issue is distinct from the immunity issue. The defendants' refusal to accept that principle does not require me to reconsider each order that reflects it.

---

> Senator D'Amato's inability to waive the Speech or Debate privilege of another member of Congress may be of limited significance, however, unless it is established that the privilege properly applies to the subject matter of the offered testimony. Although information concerning speech and debate on the floor of Congress is absolutely protected, information related to activities other than speech and debate will be privileged only if: 1) the matter to be protected is an integral part of those processes of deliberation and communication by which Congressmen and Senators participate in committee and legislative proceedings, *Miller v. Transamerican Press*, 709 F.2d at 529 (citation omitted); and 2) the matter relates either to proposed legislation or to other subjects within the constitutional jurisdiction of Congress. *Id.*

*U.S. Football League v. Nat'l Football League*, 1986 WL 6341, at *4 (S.D.N.Y. May 30, 1986) (emphasis added), *aff'd*, 842 F.2d 1335 (2d Cir. 1988).

Finally, the issue here is whether someone who purportedly had a legislative privilege may have waived that privilege by including non-legislators in conversations that are asserted to have been part of the legislative process. That issue did not arise in *United States Football League*, as there was no objection in that case to Senator D'Amato testifying "as to his own conversations with NFL representatives." 1986 WL 6341, at *4. Moreover, the defendants' objection to Spiritis' testimony here does not implicate the same issue as Senator D'Amato's potential testimony about "conversations between NFL personnel and other members of Congress." *Id*. Spiritis was merely asked questions about his own conversations.

In short, the defendants have failed to satisfy even their own incorrect standard, much less the more exacting the correct one. There is thus no basis for reconsidering my earlier decision; because I have no reason to believe that reargument would prove any more illuminating than counsel's letter, that alternate form of relief is likewise unwarranted.

C.  The Defendants' Proffered Additions To The Record

In filing their letter-motion, the defendants also filed affidavits by Spiritis and co-defendant James Hennessy. DE 56 Exs. B, C. Their counsel writes that "[u]nder Local Civil Rule 6.3, a party seeking reconsideration may submit affidavits by leave of court." DE 56 at 3. That description of the rule is inaccurate. The rule provides, "No affidavits shall be filed by any party unless directed by the court." Loc. Civ. R. 6.3. I never directed the filing of any affidavits, and I see no reason to do so now. *See Quartararo v. Catterson*, 73 F. Supp.2d 270, 273 (E.D.N.Y. 1999) (court struck affidavit filed without advance permission from court pursuant to Local Civil Rule 6.3). Moreover, having read the proffered affidavits, which contain self-serving assertions that the meetings of three legislators in a private home with a political operative but

6

without legislators of another party were somehow an integral part of the legislative process, I am confident that they would not affect my ruling on reconsideration. Even assuming the truth of the assertion, I would adhere to my view that the legislative privilege was waived by the participation in the conversations at issue of a non-legislator. That waiver was made by all the Council Members who participated in the meetings and voluntarily admitted a political operative to the conversation, not simply by Spiritis.

D.  The Format Of The Defendants' Submission

Under my individual practice rules, "All letters submitted pursuant to this rule [governing letter-motions pursuant to Local Civil Rule 37.3] shall be no longer than three pages in length, exclusive of attachments." Virtually every other attorney before me who has submitted a letter-motion has appeared to understand that the rule is designed to keep the substantive portion of a submission within a reasonable length. The defendants may not share that understanding. Having previously objected to the length of a nine-page letter that consisted mostly of depositions transcripts that could just as easily, and properly, been reproduced in a separate attachment, *see* DE 52 at 3-4, counsel has now submitted a letter that manages to cram its substance into three pages only through the apparent use of either unusually small margins, an unusually small typeface, or both. Under the strict letter of my current rules, doing so violates nothing more than common sense and courtesy; henceforth, in this case, it will violate an order of the court. Although I would prefer not to have to address such matters, I now order that all future letters filed in this case must comply with the formatting requirements applicable to appellate briefs pursuant to Fed. R. App. P. 32(a)(4)-(6) with the following exceptions: text may be single-spaced, and a proportionally spaced typeface must be 12-point or larger. With respect to papers

submitted to me (rather than to Judge Seybert), I will police compliance with this order to the extent I deem appropriate; counsel need not do so for me.

E.	Conclusion

For the reasons set forth above, the defendants' motion for reconsideration or reargument of my order of July 27, 2005 is DENIED. In addition, I order that all future letters filed in this case must comply with the formatting requirements applicable to appellate briefs pursuant to Fed. R. App. P. 32(a)(4)-(6) with the following exceptions: text may be single-spaced, and a proportionally spaced typeface must be 12-point or larger.

**SO ORDERED.**

Dated:	Central Islip, New York
	August 16, 2005

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge
