UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MARIA ALMONTE, et al.,

                       Plaintiffs,

        - against -

CITY OF LONG BEACH, et al.,

                       Defendants.
----------------------------------------------------------X

**ORDER**

CV 04-4192 (JS) (JO)

**JAMES ORENSTEIN, Magistrate Judge:**

      Plaintiffs Maria Almonte, Mary Cammarato ("Cammarato"), Barbara Davis, and Peter Snow – former employees of the City of Long Beach ("City") – charge the City and Mona Goodman, James Hennessy ("Hennessy"), and Thomas Sofield, Jr. individually and in their official capacities, and Glen Spiritis in his official capacity (collectively, the "Individual Defendants") with unlawfully terminating their employment or eliminating their positions because of their constitutionally protected political affiliations and activities. Docket Entry ("DE") 62. The instant dispute relates not to the merits of the plaintiffs' claims, but rather the identity of the attorneys litigating them. Specifically, some six months after the defendants substituted their counsel, DE 29, and following my inquiry into the issue *sua sponte*, the plaintiffs moved to disqualify attorneys Ronald Rosenberg and John Ciulla, and the law firm of Rosenberg, Calica & Birney ("RCB") from representing any of the defendants in this litigation. DE 83. After the United States Court of Appeals for the Second Circuit resolved an interlocutory appeal on an unrelated aspect of this case, DE 99, the Honorable Joanna Seybert, United States District Judge, referred the disqualification motion to me for decision on March 23, 2007. DE 100. For the following reasons, I now deny the motion.

I.   Background

   A.   Facts Underlying This Action

In June and July 2004, the plaintiffs learned that their employment with the City had been terminated. Each was an active and well-known member of the local Democratic Party, and two had campaigned intensively for Democratic candidates in the 2003 elections. Three of the City Council members elected in 2003 were Republicans, as was the newly-elected City Manager. According to the allegations of the Amended Complaint, these four Republicans – the Individual Defendants – met secretly at the home of the City's Corporation Counsel to discuss firing the plaintiffs because of the latter's affiliations with the Democratic Party. DE 62. Shortly thereafter, the City Council adopted Resolution No. 121/04 and Resolution No. 181/04, which effectively terminated the funding lines for each plaintiff's employment. *Id.*

   B.   RCB's Successive Representations

RCB has represented the City on numerous occasions; relevant here are those on which RCB represented the City and certain individuals named as its co-defendants. In 2002, Hennessy (one of the Individual Defendants in this case) filed suit against the City and certain individual defendants. *Hennessy v. City of Long Beach, et al.*, CV 02-4504 (ADS) (MLO). Hennessy alleged that Eugene Cammarato (the husband of plaintiff Cammarato in this case), who was then the City's Director of Operations, had subjected him to adverse employment actions after Hennessy decided to become a Republican candidate for City Council. In the *Hennessy* case, RCB represented the City and Mr. Cammarato, and was therefore adverse to Hennessy in his capacity as a plaintiff. The repercussions of that representation in this action are plain: RCB now defends its former adversary Hennessy against claims lodged by the wife of its former client Eugene Cammarato. Further complicating the ethical landscape, when Hennessy sued the City

2

he was represented by an attorney named Charles Theofan ("Theofan"). Theofan went on to become the City's Corporation Counsel, in which capacity he served at the time the instant litigation began, and shortly thereafter became the City Manager. Theofan appears to be heavily implicated in the facts giving rise to the instant litigation; one of the key factual allegations in the Complaint in this case is that the decision to eliminate the plaintiffs' positions was made at clandestine meetings in Mr. Theofan's home – meetings attended by an official of the political party with which the Individual Defendants were aligned, but from which City Council members of the opposing party were excluded.

Another lawsuit of relevance to the instant motion is *Hodge v. City of Long Beach, et al.*, CV 02-5851 (TCP) (JO), in which RCB again represented the City. The plaintiff in that action, James Hodge, claimed that Eugene Cammarato, while still the City's Director of Operations, had subjected him to adverse employment actions because the two supported different political candidates in the primary election for Nassau County Executive. In that case, unlike this one, Theofan (as the City's Corporation Counsel) decided to engage separate counsel for the individual City officials who were named in that case. By doing so, Theofan ensured that the City, represented by RCB, would be in a position to try to blame the individual officials – who did not belong to the same party as himself, and who would thereafter not be represented by RCB – for any conduct giving rise to liability. In contrast, in this case – where the individual officials who remain as defendants are all of the same political party as Theofan – the City appears to be content to abandon any reliance upon a theory that its employees acted beyond the scope of their official duties: having decided that RCB will jointly represent the Individual Defendants as well as the City, the City lacks an attorney who can ethically pursue such a defense theory.

C.  Procedural History

On January 6, 2006, the plaintiffs moved to disqualify RCB from representing any of the defendants in this action, citing serious conflicts of interest arising from its concurrent representation of the City and the Individual Defendants and from its prior representation of the City and others. DE 83. Shortly thereafter, all defendants moved to dismiss the complaint on grounds that legislative immunity protected all actions taken by the Individual Defendants in connection with the budgetary resolutions that eliminated the funding for the plaintiffs' employment. DE 73. Judge Seybert granted that motion in part and denied it in part, DE 88, and appeal was taken. DE 92. On February 14, 2007, the United States Court of Appeals for the Second Circuit held that legislative immunity protects the Individual Defendants from liability for all discussions and agreements on the subject preceding the vote in addition to the vote itself. *Almonte v. City of Long Beach*, 478 F.3d 100 (2d Cir. 2007). Further, the Second Circuit explained that legislative immunity does not protect the Individual Defendants from liability for any administrative firing or conspiracy to administratively fire prior to the vote. *Id.* Following that decision, Judge Seybert referred the disqualification motion to me for decision. DE 100.

II.  Discussion

A.  Legal Standards for Disqualification

Attorneys who practice in the Eastern District of New York must conform their conduct to the strictures of the New York Lawyer's Code of Professional Responsibility (the "New York Code"). *See* Loc. Civ. R. 1.3; *id.*1.5(b)(5); *see also In re Snyder*, 472 U.S. 634, 645 n.6 ("The federal court is entitled to rely on the attorney's knowledge of the state code of professional conduct ...."). Federal courts look to the New York Code and the American Bar Association's Model Code of Professional Responsibility (the "ABA Code") for guidance, but the standard for

4

disqualification is a matter of federal law. *Hempstead Video, Inc. v. Incorporated Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005).

The court's discretionary authority to disqualify a civil litigant's counsel stems from its responsibility to supervise members of the bar and its "inherent power to preserve the integrity of the adversary process." *Hempstead Video, Inc.*, 409 F.3d at 132 (citations and internal quotation omitted). As a general matter doubts are resolved in favor of disqualification, but the court's analysis of such motions is exacting; disqualification is a drastic sanction. *Shabbir v. Pakistan Int'l Airlines*, 443 F. Supp.2d 299, 304 (E.D.N.Y. 2005). The moving party thus bears the "heavy burden" of demonstrating that disqualification is necessary. *Evans v. Artek Sys. Corp.*, 715 F.2d 788 (2d Cir. 1983). Specifically, the moving party must show that allowing the challenged representation to continue would present a real risk of trial taint. *Shabbir*, 443 F. Supp.2d at 305 (citations omitted). Such a risk arises when an attorney is in a position to use confidential information acquired in previous representation of a client against that client in another matter or when a conflict of interest will likely affect an attorney's ability to represent her client's interests vigorously. *Id*.

Two competing interests are at stake in this analysis: an individual's right to the counsel of her choice and "the need to maintain the highest standards of the profession." *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978) (citations omitted).[1] This rigorous

---

[1] The analysis of a court's authority to disqualify counsel for a civil litigant differs in important respects from the corresponding issue in the context of a criminal case. The latter implicates two rights under the Sixth Amendment that are occasionally in tension with one another: the right to effective, conflict-free counsel, and the right to counsel of choice. *Compare United States v. Schwarz*, 283 F.3d 76 (2d Cir. 2002) (vacating conviction where trial court erroneously accepted defendant's waiver and permitted conflicted counsel to represent the defendant at trial) *with United States v. Gonzalez-Lopez*, 126 S.Ct. 2557 (2006) (vacating conviction, without requiring a showing of prejudice, where trial court erroneously declined to accept waiver of conflict and disqualified defendant's counsel of choice).

standard is both equitable and pragmatic. Courts are neither the sole forum for adjudicating alleged ethical lapses nor even the best forum for doing so. At both the federal and state level, there exists "comprehensive disciplinary machinery" – namely, bar authorities – that have a specific mandate to enforce the disciplinary rules of their respective jurisdictions and to sanction the attorneys who violate those rules rather than punish the clients who may innocently have sought such attorneys' counsel. *See Bd. of Educ. of the City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1978).

On the other hand, a court considering a motion for disqualification must remain cognizant of the specific harms that the rules were designed to prevent. Among those harms are the possible misuse of confidential information gained in one representation to a client's detriment in subsequent representation of another, and the potential impairment of professional judgment arising from a lawyer's simultaneous representation of multiple clients with divergent interests. N.Y. Comp. Codes R. & Regs. tit. 22, §§ 1200.19; 1200.24; 1200.27 (2006). The risk of the former is intrinsic to any circumstance in which a lawyer's former client finds himself to be the adversary of his former lawyer in litigation subsequent to the representation. No formal attorney-client relationship is required; the question is whether "sufficient aspects" of the attorney-client relationship existed to trigger inquiry into conflicts arising from the current litigation. *Dominica Mgmt, Inc. v. American Univ. of Antigua*, 2005 WL 1423338 (S.D.N.Y. June 15, 2005) (citing, *inter alia*, *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748-49 (2d Cir. 1981). Disqualification is proper if the former client demonstrates that there is a "substantial relationship" between the subject matter of the prior representation and that in the current litigation and that the lawyer likely had access to relevant privileged information during the prior representation. *Hempstead Video, Inc.*, 409 F.3d at 133 (citation omitted). Once the court

determines both that an attorney-client relationship existed and that the matters were substantially related, a rebuttable presumption of access arises. *Team Obsolete, Ltd. v. A.H.R.M.A. Ltd.*, 2006 WL 2013471, at *7 (E.D.N.Y. July 18, 2006).

Conflicts arising out of simultaneous representation are not governed by the "substantial relationship" test; clients can have no reasonable expectation that their confidences will be kept secret from their co-parties. *Shabbir*, 443 F. Supp.2d at 310. The relevant inquiry is whether the lawyer's professional judgment will be impaired by the joint representation and thus the New York Code prohibits a lawyer from "continu[ing] multiple employment ... if it would be likely to involve the lawyer in representing differing interests[.]" N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.24 (2006). Only one exception exists: if a "disinterested lawyer" would believe that the lawyer with multiple clients could represent each competently, and if each client gives informed consent, then the simultaneous representation may continue. *Id.*

Where the challenged multiple representation includes as co-parties a municipality and its individual employees, special concerns obtain. In *Dunton v. County of Suffolk*, the Second Circuit explained that actions brought pursuant to 42 U.S.C. § 1983 create a pronounced potential conflict of interest between a municipality and its co-defendant employee. 729 F.2d 903 (2d Cir. 1984). The municipality avoids liability if it can demonstrate that its employee was acting outside the scope of official duties, whereas the employee avoids liability by demonstrating that his actions conformed to official policy. *Id.* at 910. Even in these circumstances, however, there is no absolute rule that an attorney be disqualified; a case-by-case determination is all that is required and separate counsel may not be necessary in the event of a sufficient waiver by either co-defendant. *Patterson v. Balsamico*, 440 F.3d 104, 114-15 (2d Cir. 2006); *Dunton*, 729 F.2d at 910.

7

B.   RCB's Prior Representation of the City and Eugene Cammarato

The plaintiffs have identified two possible ethical conflicts arising from RCB's prior representation of the City and Eugene Cammarato that purportedly warrant the disqualification of RCB.  First, in the event that Eugene Cammarato is called as a witness for deposition or otherwise, RCB might be ethically barred from cross-examining him.  N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.19(b)(2) ("[A] lawyer shall not knowingly ... use a confidence or secret of a client to the disadvantage of the client.").[2]  That concern, if it exists at all, is premature.  RCB has represented that it has no current intention of calling Eugene Cammarato as a witness but indicated that it may choose otherwise if the course of discovery reveals a need for his testimony, DE 84 at 15 & n.16, and although the plaintiffs have preserved the possibility of doing so, they have not yet said that they will seek to call him.  Accordingly, any potential conflict arising from Eugene Cammarato's status as a potential witness has not yet ripened into a basis for RCB's disqualification and may never do so.[3]

---

[2]  I note that to the extent that the plaintiffs advance the theory that plaintiff Cammarato stood in an attorney-client relationship with RCB as a consequence of the relationship between RCB and her husband Eugene Cammarato, it is the plaintiffs themselves who bear the burden of persuasion.  They have not provided evidence of such a relationship, and I therefore reject the theory as a basis for disqualification.

[3]  Rather more troubling in this regard is the fact that RCB's predecessor counsel likely *did* plan to depose Eugene Cammarato on behalf of all the defendants.  *See* DE 84, Ex. A (Tr. of Status Conf. dated Dec. 5, 2005) at 10-11.  The defendants' position on whether that deposition should take place did not change until I raised questions about the ethical implications of RCB's multiple representations.  *See id.*  The record thus suggests that the defendants have abandoned a potentially useful area of inquiry to avoid creating a disqualifying conflict of interest for their attorney.  While such a record might suffice to warrant disqualification in a criminal case, *see Schwarz*, 283 F.3d at 95-96 (holding that disqualification was warranted where no rational defendant would accept the consequences of his attorney's conflict, and that the defendant's explicit waiver of the conflict was therefore invalid), it does not require disqualification in a civil case such as this.

The second and more troubling conflict pertains to the likelihood that RCB learned confidential information from its representation of Eugene Cammarato that would prejudice his wife, RCB's adversary here. N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.19(b)(3) ("[A] lawyer shall not knowingly ... use a confidence or secret of a client for the advantage of the lawyer or of a third person, unless the client consents after full disclosure."). RCB argues that Eugene Cammarato divulged nothing during the prior representation that would bear on the current case: the theory is that because control of the City's government has switched from one political party to the other in the time between RCB's two engagements, any information that RCB could have gleaned about the prior administration has no bearing on the presumably different policies and practices that obtain today. *See* DE 84 at 11 & n.11. That tactically surprising argument – which carries the tacit implication that the practices and policies RCB previously defended as proper have given way to something else – may end up making Eugene Cammarato a witness and giving rise to further litigation about the propriety of RCB's continuation as counsel. But while the argument is unpersuasive, it is in any event made by RCB rather than the plaintiffs – and it is the latter who bear the burden of demonstrating the existence of an attorney-client relationship and a substantial relationship between current and prior representations. *Shabbir*, 443 F. Supp.2d at 305.

The plaintiffs have not satisfied that requirement. The sole basis for this portion of their motion appears to be the conclusory assertion that RCB must have learned privileged information from its representation of Eugene Cammarato that could be used to their prejudice in this case. They adduce no evidence to support that theory, despite the fact that Eugene Cammarato's interests are presumably aligned with his wife's and those of the other plaintiffs in this case and that he would therefore have an incentive to provide such evidence if it were

9

available. In the absence of anything more than speculation in the record, I deny the plaintiffs' motion to disqualify RCB on basis of its prior representation of Eugene Cammarato.

> C. RCB's Simultaneous Representation of the City And Individual Defendants In This Case

As the plaintiffs point out, a conflict of interest inheres in joint representation of a municipality and its employees in an action pursuant to Section 1983 not only because their defenses may be inconsistent, *Dunton*, 729 F.2d at 907, but also because the City cannot be held liable for punitive damages. *Cook County, Illinois v. U.S. ex rel. Chandler*, 538 U.S. 119, 129 (2003) (citing *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259-60 (1981)). Clients may waive the conflicts of interest that arise from concurrent representation by giving informed consent to the ongoing representation, if a disinterested lawyer would perceive no impairment of professional judgment stemming from the joint representation. N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.24(c). This case presents the possibility of both types of conflicts – the plaintiffs demand punitive damages, and the City might well defend against liability by shifting blame entirely to the Individual Defendants in the event that the plaintiffs successfully demonstrate that they were administratively fired before their positions were legislatively terminated.

Existence of a potential conflict does not mandate disqualification; the plaintiffs must show "a sufficiently serious actual conflict of interest." *Patterson*, 440 F.3d at 115 (citing *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993)). They have not made such a showing at this stage, despite indications that a serious conflict may be in the offing. For example, RCB claims that all defendants have waived any conflict of interest that might exists, thereby mooting the plaintiffs' objections. But this is not precisely the case. The City may well have made a "determination not to assert" any defense premised on the argument that the

Individual Defendants' actions exceeded the scope of their employment. DE 84 at 5. Such a determination gives no security to the Individual Defendants and thus does not alleviate the inherent tension in joint representation. *See, e.g.*, *Weintraub v. Bd. of Educ. of the City of New York*, 2001 WL 984933, at *3 (E.D.N.Y. Jul. 17, 2001) (municipal defendants failed to provide sufficient estoppel grounds for individual defendants and thus failed to successfully waive *Dunton* conflict). Moreover, the Second Circuit's recent ruling in this case does not preclude the City from employing such a defense; if anything, it re-focuses the inquiry on the propriety of the Individual Defendants' actions. 478 F.3d at 106-08. Should the plaintiffs succeed in demonstrating that they were fired administratively and not as part of a legislative exercise, the Individual Defendants would be unable to claim legislative immunity for their actions and the possibility that the defendants might find their interests at odds would be revived. On the current record, however, there is simply no indication that the defendants' counsel would neglect its obligation to advance and argue all possible defenses available to the Individual Defendants. As a result, I decline to order RCB's disqualification on the current record. *See Patterson*, 440 F.3d at 115.

III.     Conclusion

There is much about the relationship between RCB and its various City clients that is troubling. I cannot escape the impression, for example, that the City and RCB have been far more solicitous of the interests of the individual officials from one political party – the one currently in power – than those of similarly situated individual clients from the opposing political party. However, to the extent RCB's role in this case and others is a matter of ethical concern, and regardless of the consequences of such concerns in other settings, none of the potential problems rises to the level that requires disqualification by the court. Accordingly, for

the reasons stated above, I deny the plaintiffs' motion to disqualify RCB from continued representation of the defendants in this case.

**SO ORDERED.**

Dated: Brooklyn, New York
March 27, 2007

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge
