```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------x
MARIA ALMONTE, MARY CAMMARATO,
BARBARA DAVIS, GREGORY SCOTT,
and PETER SNOW,

                    Plaintiffs,
                                              MEMORANDUM & ORDER
         -against-                            04-CV-4192 (JS)(ARL)

THE CITY OF LONG BEACH, MONA GOODMAN,
JAMES P. HENNESSEY and THOMAS
SOFIELD, JR., individually and as
members of the COUNCIL of the CITY OF
LONG BEACH, and GLEN SPIRITIS,
individually and as Manager of the
CITY OF LONG BEACH,

                    Defendants.
----------------------------------------x
```

APPEARANCES:
For Plaintiff:      Louis D. Stober, Jr., Esq.
                    Law Offices of Louis D. Stober, Jr., LLC
                    350 Old Country Road, Suite 205
                    Garden City, New York 11530

For Defendants:     Ronald J. Rosenberg, Esq.
                    John S. Ciulla, Esq.
                    Rosenberg Calica & Birney, LLP
                    100 Garden City Plaza
                    Garden City, New York 11530

SEYBERT, District Judge:

INTRODUCTION

On January 2, 2008, Maria Almonte ("Almonte"), Mary Cammarato ("Cammarato"), Barbara Davis ("Davis"), Gregory Scott ("Scott"), and Peter Snow ("Snow") (collectively, "Plaintiffs"), filed a Second Amended Complaint against the City of Long Beach ("City"), Mona Goodman ("Goodman"), James P. Hennessey ("Hennessey"), Thomas Sofield, Jr. ("Sofield"), and Glen Spiritis ("Spiritis") (collectively, the "Defendants") alleging violations

of the First and Fourteenth Amendments of the United States Constitution, 42 U.S.C. §§ 1983, 1985, 1986, New York Labor Law § 201-d, and the City of Long Beach Charter ("Charter") 2 § 14. Pending before the Court is Defendants' motion to dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(c) and Rule 56. For the reasons explained herein, Defendants' motion is GRANTED in part and DENIED in part.

PROCEDURAL BACKGROUND

Plaintiffs commenced this action on September 27, 2004, and filed an Amended Complaint on August 5, 2005. Thereafter, Defendants moved to dismiss pursuant to Rule 12(b)(6). Specifically, Defendants argued that the Individual Defendants were entitled to qualified immunity and legislative immunity for their actions in passing Resolution 121/04, the resolution which eliminated Plaintiffs' jobs. Defendants also argued that Plaintiff Cammarato's termination based on her political affiliation was permissible because Cammarato was a policy-maker.

On March 28, 2006, the Court issued an Order granting Defendants' motion in part and denying it in part. The Court held that the Individual Defendants were absolutely immune for voting for the budgetary resolutions that abolished Plaintiffs' positions, but were not protected for private meetings held prior to the passage of the Resolution. Additionally, the Court found that it did not have enough evidence before it to decide whether Cammarato

was a policy-maker.

Defendants filed an Interlocutory Appeal to the Court of Appeals for the Second Circuit. On February 14, 2007, the Second Circuit reversed the March 2006 Order in part. The Second Circuit held that "legislative immunity cloaks not only the vote on the budgetary resolutions, but also any discussions the Council members may have held, and any agreements they may have made, regarding the new budget in the months preceding the actual vote. That the discussions and agreements occurred in secret does not strip these activities of their legislative function." Almonte v. City of Long Beach, 478 F.3d 100, 107 (2d Cir. 2007). The Second Circuit remanded to this Court to determine, "based on the operative complaint or upon further amendment, whether any of the Plaintiffs have alleged or could allege" that the Defendants fired or administratively conspired to fire the Plaintiffs prior to the date on which their position was abolished pursuant to the legislation. Id. at 104.

FACTUAL BACKGROUND

The Court takes these facts from the Plaintiffs' Second Amended Complaint, and presumes such facts to be true in resolving Defendants' motion pursuant to Rule 12(c). Only those facts relevant to the pending issues are discussed herein.

Plaintiffs, residents of Nassau County, were all employees of the City and actively involved with the Democratic

Party. Defendants Goodman, Hennessey and Sofield are Republican Council Members of the City ("Council Members"), and Defendant Spiritis was the City Manager at the time of the alleged acts. Plaintiffs allege that they were political targets of the Defendants and were terminated from their positions with the City as a result of their political affiliation.

The City employed Almonte as a full-time Bus Driver in 1986; thereafter, Almonte worked with the City in various capacities until June 30, 2004. The City terminated Almonte's employment on May 25, 2004, and informed Almonte that her last day of employment would be June 30, 2004. (Comp. Ex. B.) In February of 1985, the City hired Cammarato as a part-time clerical worker. Cammarato held the position of Tax Assessor from June of 1998 until July 25, 2004. On June 25, 2004, the City informed Cammarato via letter that her last day of employment would be July 25, 2004. (Comp. Ex. H.)

Davis began her employment with the City in 1982, and ultimately held the position of Administrative Aid. On June 16, 2004, the City terminated Davis's employment. Snow began his employment with the City in 1995. On or about October 25, 2003, Snow passed the Civil Service Examination for the position of Municipal Building Superintendent. On June 1, 2004, Defendants advised Snow that "pursuant to Civil Service Law, Section 63, . . . [Snow's] employment with the City will end effective July 2,

2004." (Comp. Ex. T.) Thereafter, on June 9, 2004, the City posted a vacancy for Municipal Building Superintendent, Snow's previous position. (Comp. Ex. U.)

Plaintiffs commenced this action seeking redress for the substantial and irreparable injury they sustained as a result of Defendants terminating their positions with the City based on their political affiliation.

Undisputed Material Facts Pursuant to the Parties' 56.1 Statements

The City Manager is the chief administrative officer of the City. (Defs.' Stmt. ¶ 1.) Article 2, Section 11 of the City Code states, the "appointive officers of the City of Long Beach shall be . . . a tax assessor." (Rosenberg Decl., Ex. L). The Board of Assessors, of which the Tax Assessor is a member, hears grievances by taxpayers to challenge an assessment. (Defs.' Stmt. ¶ 28.) Cammarato held various certificates and had completed several courses related to her position as Tax Assessor, and was a fourteen-year member of the New York State Assessor's Association, nine year New York State certified assessor, nine year New York State Certified Assessor Professional, and nine year New York State Certified Assessor Advanced in Institute of Assessing Officers. (Id. ¶¶ 43, 44.)

DISCUSSION

I. Standard of Review

A. Rule 12(c)

The Court reviews a motion to dismiss pursuant to Rule 12(c) under the same standard as a motion to dismiss pursuant to Rule 12(b)(6). See Ades & Berg Group Investors v. Breeden (In re Ades & Berg Group Investors), 550 F.3d 240, 243 n.4 (2d Cir. 2008).

When adjudicating a motion to dismiss a complaint under Rule 12(b)(6), the Court must accept the factual allegations set forth in the Complaint as true and draw all reasonable inferences in favor of the Plaintiff. See Cleveland v. Caplaw Enter., 448 F.3d 518, 521 (2d Cir. 2006); Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005). The Plaintiff must satisfy "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." Id.

B. <u>Rule 56</u>

"Summary judgment is appropriate where there is no genuine dispute concerning any material facts, and where the moving party is entitled to judgment as a matter of law." <u>Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp. (In re Blackwood Assocs., L.P.)</u>, 153 F.3d 61, 67 (2d Cir. 1998) (citing Fed. R. Civ. P. 56(c)); <u>see</u> <u>also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." <u>McLee v. Chrysler Corp.</u>, 109 F.3d 130, 134 (2d Cir. 1997); <u>see</u> <u>also</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." <u>McLee</u>, 109 F.3d at 134.

"Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000)

(quoting Anderson, 477 U.S. at 256). "Mere conclusory allegations or denials will not suffice." William v. Smith, 781 F.2d 319, 323 (2d Cir. 1986).

I. Legislative Immunity

The Supreme Court has held that local legislators, like their state and regional counterparts, are "absolutely immune from suit under § 1983 for their legislative activities." Bogan v. Scott-Harris, 523 U.S. 44, 49, 118 S. Ct. 966, 140 L. Ed. 2d 79 (1998). This immunity "extends to the acts of introducing, voting for, and signing local ordinances." Moran v. City of New Rochelle, 346 F. Supp. 2d 507, 521 (S.D.N.Y. 2004). The Second Circuit has now clarified that legislative immunity extends "to all aspects of the legislative process, including the discussions held and alliances struck regarding a legislative matter in anticipation of a formal vote." Almonte, 478 F.3d at 107. The fact that the "discussions and agreements occurred in secret does not strip these activities of their legislative function." Id.

The Second Circuit has remanded on the issue of legislative immunity solely for the Court to determine whether Plaintiffs could show that they were administratively terminated prior to the effective date of the budgetary changes. To determine whether Defendants' decision to terminate Plaintiffs was administrative or legislative, the Court must examine the nature of the act. Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206,

211 (2d Cir. 2003). "A personnel decision is administrative in nature if it is directed at a particular employee or employees, and is not part of a broader legislative policy." Almonte, 478 F.3d at 108. For example, in Harhay, the Second Circuit held that the fact that an "employment decision . . . was made by a "vote" of the Board to "table" [the plaintiff's] resignation [did not] alter[] the otherwise administrative nature of [the defendants'] actions. The [defendants were] not entitled to absolute legislative immunity because their acts were not quintessentially legislative, but rather were part of a process by which an employment situation regarding a single individual was resolved." Harhay, 323 F.3d at 211.

In evaluating the individual circumstances of this case, the Court finds that Plaintiffs have not shown that their employment terminations were administrative in nature. Plaintiffs argue that their employments were terminated prior to the effective date of the resolution, and maintain that July 1, 2004 was the effective date of the resolution. However, this date is clearly contradicted by the record. The resolution, dated May 25, 2004, contains express language stating "This Resolution shall take effect immediately." Rosenberg Ex. H. Although the resolution states that it adopts a budget for the fiscal year commencing July 1, 2004, that does not support Plaintiff's allegation that the effective date of the resolution was the first day of the fiscal

9

year.

The Resolution states that one bus dispatcher, the Tax Assessor, and one Administrative Aide, and other various positions were abolished for the July 1, 2004 fiscal year. It is clear that Almonte, Davis, and Cammarato thus had their position abolished by the Resolution. Each of these three Plaintiffs received their termination notice on or after May 25, 2004, the date the Resolution was passed. Plaintiffs have not alleged any facts, which if taken as true, would show that these three Plaintiffs were administratively terminated prior to the passage of the Resolution, on May 25, 2004. Nor are there any allegations which would support a finding that Defendants made a separate personnel decision with respect to these three Plaintiffs, as opposed to a broad budget evaluation that affected numerous positions. Thus, it is clear to the Court that Individual Defendants are entitled to legislative immunity for their acts in abolishing Almonte, Davis, and Cammarato's positions.

However, the Court's determination regarding Plaintiff Snow is not as clear. Plaintiff Snow alleges that on October 25, 2003, he passed and received the highest score on the Civil Service Exam for the position of Municipal Building Superintendent. As per the City's requirements, Snow was placed on a six-month probationary period. On June 1, 2004, Defendants advised Snow that "pursuant to Civil Service Law, Section 63, . . . [Snow's]

employment with the City will end effective July 2, 2004." (Comp. Ex. T.) Thereafter, on June 9, 2004, the City posted a vacancy for the position of Municipal Building Superintendent. (Comp. Ex. U.) Snow's position was not eliminated by the Resolution. However, Defendants maintain that on August 3, 2004, the City Council amended the personnel roster to eliminate the position of Building Superintendent.

The Court finds that Plaintiffs have shown that Snow may have been administratively terminated. Taking Plaintiffs' allegations as true, Snow was not terminated because his position was eliminated by the Resolution. Rather, Defendants made a decision targeted solely at Snow to terminate Snow's employment. Thereafter, the position for Municipal Building Superintendent remained vacant, and Defendants sought a replacement, albeit for a short time until the position was eliminated in August of 2004. Defendants' elimination of the position after Snow's termination does not entitle Defendants to legislative immunity. "Even assuming, without deciding, that the elimination of [Snow's] position was a legislative act, his earlier termination from a position which then, at least briefly, remained open was an administrative act that legislative immunity does not protect." Jessen v. Town of Eastchester, 114 F.3d 7, 8 (2d Cir. 1997). Thus, the Court finds that at this stage in the proceedings, legislative immunity does not apply to Snow's termination.

11

II. <u>The Court cannot find that Cammarato is a Policy-Maker.</u>

Defendants argue that they are entitled to summary judgment on Plaintiff Cammarato's claims because Cammarato was a "policy-maker." Defendants made this same argument in their initial motion to dismiss. In the March 2006 Order, this Court stated that the policy-maker exception is generally evaluated after "reviewing properly submitted evidence on summary judgment motions." Thus, the Court denied Defendants' motion to dismiss Cammarato's claims because it could not, at that time, evaluate whether Cammarato was a policy-maker. Although discovery has been stayed in this action, Defendants now move for summary judgment on their claim that Cammarato was a policy-maker. Plaintiffs strongly oppose Defendants' motion, and argue that they should be entitled to discovery to show that Cammarato was not a policy-maker.

The policy-maker exception enables a public entity to terminate an employee based on political patronage without violating the First Amendment. <u>See</u> <u>Elrod v. Burns</u>, 427 U.S. 347, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976). A policy-maker holds a position wherein "political affiliation and political viewpoint are permissible employment criteria." <u>Kaluczky v. City of White Plains</u>, 57 F.3d 202, 208 (2d Cir. 1995). The Second Circuit has clarified that "political affiliation is an appropriate requirement when there is a rational connection between shared ideology and job performance." <u>Savage v. Gorski</u>, 850 F.2d 64, 68 (2d Cir. 1988).

The determination of whether an employee is a policy-maker is a question of law, although it involves a fact-intensive inquiry. See Almonte, 478 F.3d at 110. Factors to be considered include,

> whether the employee (1) is exempt from civil service protection, (2) has some technical competence or expertise, (3) controls others, (4) is authorized to speak in the name of policymakers, (5) is perceived to be a policymaker by the public, (6) influences government programs, (7) has contact with elected officials, and (8) is responsive to partisan politics and political leaders.

Vezzetti v. Pellegrini, 22 F.3d 483, 486 (2d Cir. 1994).

These factors are applied to the employee's job description, and not to the duties that the employee ultimately performed. See Regan v. Boogertman, 984 F.2d 577, 580 (2d Cir. 1993).

Defendants make the same compelling argument that the Tax Assessor position is subject to the policy-maker exception that Defendants argued in their initial motion to dismiss. However, Defendants now submit more evidence, including an Affidavit submitted by Maureen Coyle, present Tax Assessor for the City of Long Beach. Cammarato greatly contests the majority of Coyle's statements and argues that she has not been afforded an opportunity to depose Coyle to challenge her statements. Cammarato additionally maintains that Coyle does not have knowledge of the job duties of Tax Assessor at the time of Plaintiff Cammarato's

13

tenure.

Cammarato submits an Affidavit maintaining that the Tax Assessor did not have great discretion and did not work closely with City Manager, and submits a letter written by Edwin Eaton, Former City Manager, wherein Eaton states, "most emphatically" that the Tax Assessor is simply a department head and does not have any confidential or policy-making roles. (Cammarato Aff. Ex. B.). Certainly, there is still a question as to whether the Tax Assessor is seen as a policy-maker by the public, and whether the Tax Assessor is "empowered to act and speak on behalf of a policymaker, especially an elected official." Gordon v. County of Rockland, 110 F.3d 886, 890 (2d Cir. 1997).

The Court is aware that it must determine whether the Tax Assessor position itself falls under the policy-maker exception, and not whether Cammarato or Coyle individually performed duties that would classify them as a policy-maker. However, this is a fact-intensive inquiry. Here, the Court is presented with different presentations as to the inherent duties of the Tax Assessor. In essence, the evidence has not changed greatly since the Defendants first moved to dismiss. Defendants cite heavily to Beckmann v. Darden, 351 F. Supp. 2d 139, 144 (S.D.N.Y. 2004), but this same case was also cited to in Defendants' motion to dismiss. Although Beckman is certainly persuasive authority, it is not binding case-law for this District. Additionally, the Southern

14

District found the fact that the Rockland County Civil Service Rules designated the Village Assessor position as "confidential or requiring the performance of functions influencing policy" was "[o]f crucial importance." Id. at 143. No such designation has been shown here.

The Court agrees with Cammarato that a further factual record is necessary. Indeed, this is consistent with the Court's March 2006 Order, wherein the Court indicated that this inquiry is generally left to post-discovery motions for summary judgment.[1] See Cicchetti v. Davis, 2008 U.S. Dist. LEXIS 17245 (S.D.N.Y. Mar. 5, 2008) (finding that pre-discovery motion for summary judgment on policy-maker issue was premature). The Court finds, as it did in the March 2006 Order, that Defendants' motion is again pre-mature. Accordingly, the Court DENIES without prejudice Defendants' motion for summary judgment on Cammarato's claims. Defendants may re-move at the close of discovery.

III. Qualified Immunity Regarding Cammarato's Termination

The Individual Defendants maintain that they are entitled to qualified immunity because it would be unreasonable for Cammarato to argue that it was clearly established that the Tax Assessor position was entitled to constitutional protection.

---

[1] The Court advises the parties that future motions for summary judgment must comply with this Court's Individual Motion Practices. Parties seeking to move for summary judgment must first file a letter requesting a pre-motion conference.

Although the Individual Defendants are already protected by legislative immunity, the Court additionally finds that they are also entitled to qualified immunity against Cammarato's claims.

Generally, government officials are afforded qualified immunity so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999) (citation omitted). Courts first determine whether a plaintiff has alleged a deprivation of a constitutional right; then, whether that right was clearly established at the time of the alleged violation; and lastly, whether the defendant's actions were objectively reasonable. See id.; X-Men Security, Inc. v. Pataki, 196 F.3d 56, 65-66 (2d Cir. 1999).

Defendants argue that it was not clearly established that the Tax Assessor position was not a policymaking one, and it was reasonable for Defendants to believe that the policy-making exception applied. See McEvoy v. Spencer, 124 F.3d 92, 105 (2d Cir. 1997) (holding that the defendants were entitled to qualified immunity because "[a]lthough the record at this stage [did] not permit an ultimate decision as to whether the Deputy Chief position [was] a policymaking one, the available record adequately supports the defendants' claim that it was objectively reasonable for them to believe that it was.").

16

The Court agrees with the Individual Defendants that it was not clearly established whether the Tax Assessor position qualifies under the policy-maker exception. The Court also finds that it was objectively reasonable for the Defendants to believe that the Tax Assessor was a policy-maker. Although Defendants still have not provided enough evidence for the Court to conclusively find that the Tax Assessor was a policy-maker, the record is sufficient for the Court to find that it was reasonable for Defendants to believe that the Tax Assessor was a policy-maker. The City Charter identifies the tax assessor as an appointed officer. See Rosenberg Ex. L. Additionally, the Tax Assessor, as a member of the Board of Assessors, has substantial responsibility in assessing the value of the City's commercial and residential property. Coyle Aff. Ex. C. The Tax Assessor also had technical expertise, and finally, the Tax Assessor had contact with elected officials. See Rosenberg Ex. O. Upon these circumstances, the Court finds that it was reasonable for the Individual Defendants to believe that Cammarato was a policy-maker at the time of the passage of the Resolution. See McEvoy v. Spencer, 124 F.3d 92, 105 (2d Cir. 1997). Thus, the Court GRANTS Defendants' motion to dismiss Cammarato's claims against the Individual Defendants based on qualified immunity.

## CONCLUSION

For the reasons stated above, Defendants' motion is

DENIED in part and GRANTED in part. The Court GRANTS the Individual Defendants' motion to dismiss Almonte, Davis, and Cammarato's claims against them on legislative immunity grounds, but DENIES the Individual Defendants' motion to dismiss Plaintiff Snow's claims. The Court DENIES Defendants' motion for summary judgment on Cammarato's claims.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: Central Islip, New York
March 31, 2009